IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RENE HERNANDEZ, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 3:16-CV-452-M-BH |
| | § | |
| JOHN CASEY and | § | |
| CITY OF DALLAS, TEXAS | § | |
| Defendants. | § | Pretrial Management |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION

By order of reference dated August 12, 2016 (doc. 24), this case was referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *The Defendant City of Dallas' Rule 12(b)(6) Motion to Dismiss the Plaintiff's Claims Against it in the Plaintiff's First Amended Original Complaint, and Brief in Support*, filed June 10, 2016 (doc. 17). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

On November 17, 2015, Rene Hernandez (Plaintiff) filed suit under 42 U.S.C. § 1983 against Officer John Casey (Officer) of the Dallas Police Department (DPD) in his individual capacity, and the City of Dallas, Texas (the City). (doc. 1 at 1-2.)[1] He alleges that Officer violated his Fourth Amendment rights by using excessive force against him and that the City failed to sufficiently train and supervise its officers, and he seeks compensatory and actual damages, exemplary damages, attorneys' fees and costs, and pre- and post-judgment interest. (doc. 12 at 1, 2, 5-15.)

Officer was working undercover, in civilian clothes, when he encountered Plaintiff around 2:00

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

AM on February 19, 2014.  (*Id.* at 2.)  "[Officer] was parked outside near . . . Plaintiff's home in an unmarked Honda vehicle with dark tinted windows," conducting surveillance of a nearby residence that was believed by Officer to be a "drug location."  (*Id.* at 2, 4.)  Another individual who was apparently with Plaintiff "went to see who was in the car and an exchange of words resulted between him and [Officer]."  (*Id.* at 2.)  "After hearing cursing and yelling," Plaintiff approached the passenger side of the vehicle and attempted to peer into the car.  (*Id.* at 3.)  "Unbeknownst to [Plaintiff], [the other individual] fled prior to . . . [his] arrival [at the car]."  (*Id.*)  Because of the dark tinting of the windows, Plaintiff was unable to see into the car from the passenger side.  (*Id.*)  "[He] then walked in front of the car and approached the driver's side door, only to be met with a gun barrel."  (*Id.*)

"[Plaintiff] turned to run, and was . . . shot by the occupant of the vehicle."  (*Id.*)  At least two bullets struck Plaintiff while he was faced away from Officer.  (*Id.*)  "The first bullet entered [Plaintiff's] left side, outside the rib cage just under his skin. This bullet travelled from the left side of his back to his spinal column where it fractured and displaced his eleventh and twelfth thoracic and first lumbar vertebras."  (*Id.*) (emphasis omitted).  Officer then stood over Plaintiff and "fired the second bullet into [his] abdomen area as he lay on his back on the ground."  (*Id.*)  "The second bullet travelled from the left lower abdomen to the upper lobe of [Plaintiff's] right lung where it terminated travelling."  (*Id.*)  As a result of being shot, "Plaintiff [was] paralyzed, confined to a wheelchair, endured a number of surgeries, and has been fitted with a colostomy bag."  (*Id.* at 5.)

Plaintiff alleges that he was unarmed when he was shot.  (*Id.* at 4.)  He contends that Officer "planted the weapon [he claims to have found] at the scene."  (*Id.*)

On June 10, 2016, the City moved to dismiss Plaintiff's amended complaint for failure to state

2

a claim.  (docs. 17, 18.)[2]  Plaintiff filed a response on July 1, 2016, and the City replied on July 12,

2016.  (docs. 20, 21.)  The motion is now ripe for recommendation.

## II. PLAINTIFF'S OBJECTIONS

Plaintiff argues that the City is permitted only "one preliminary motion under Rule 12," and

that the City's second, successive motion to dismiss should therefore be denied under Rule 12(g)(2).

(doc. 20 at 3-4.)  He also objects that the motion is untimely.  (*Id.*)

A.     <u>Successive Motions</u>

Rule 12(g)(2) provides that a party who makes a motion under Rule 12 "must not make another

motion under [Rule 12] raising a defense or objection that was *available to the party but omitted* from

its earlier motion," unless another motion is permitted under Rule 12(h)(2) or (3).  Fed. R. Civ. P.

12(g)(2) (emphasis added).  The advisory committee notes for Rule 12 explain:

> This required consolidation of defenses and objections in a Rule 12 motion is salutary
> in that it works against piecemeal consideration of a case. . . . A party who by motion
> invites the court to pass upon a threshold defense should bring forward all the
> specified defenses he then has and thus allow the court to do a reasonably complete
> job. The waiver [under subdivision (h)(1)(A)] reinforces the policy of subdivision (g)
> forbidding successive motions.

*Carter v. H2R Rest. Holdings, LLC*, No. 3:16-CV-1554-N, 2016 WL 5373487, at *2 (N.D. Tex. Sept.

2, 2016) (quoting Fed. R. Civ. P. 12(g)-(h) advisory committee's notes to 1966 amendment), *adopted

by* 2016 WL 5341307 (N.D. Tex. Sept. 22, 2016).

Rule 12(h)(2) provides that a party may raise the defense of failure to state a claim upon which

relief can be granted in other procedural contexts, including a Rule 7(a) pleading, a Rule 12(c) motion

for judgment on the pleadings, or at trial.  Fed. R. Civ. P. 12(h)(2).  This rule was "intended to

---

[2] The City previously moved to dismiss Plaintiff's prior complaint.  (*See* docs. 9, 11.)  After he filed
an amended complaint on May 23, 2016, the Court denied the City's prior motions to dismiss without
prejudice on May 24, 2016.  (*See* docs. 12, 16.)

preserve the defenses listed therein, including a 12(b)(6) failure to state a claim defense, by permitting these defenses to be raised at other times in the case before entry of final judgment." *Stoffels v. SBC Commc'ns, Inc.*, 430 F. Supp. 2d 642, 648 (W.D. Tex. 2006). "Therefore, a defendant does not waive its right to argue that the plaintiff's complaint fails to state a claim for relief merely by failing to raise the issue in its first Rule 12 motion." *Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *5 (N.D. Tex. Sept. 2, 2015) (citing *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. 3:02-CV-2727-G, 2004 WL 833595, at *5-6 (N.D. Tex. Apr. 19, 2004) ("Together, Rules 12(g) and (h)(2) operate to exempt a Rule 12(b)(6) defense from the consolidation requirement and to preserve that defense from waiver.")).

This exemption from the Rule 12(g)(2) limitation was not intended to allow successive Rule 12(b)(6) motions to dismiss. *Stoffels*, 430 F. Supp. 2d at 648. The filing of an amended complaint does not "revive" the right of a defendant to file a successive Rule 12(b)(6) motion to dismiss on grounds that were *available but not raised* prior to the amended pleading. *Inclusive Communities Project, Inc. v. United States Dep't of Treasury*, No. 3:14-CV-3013-D, 2016 WL 6397643, at *8 (N.D. Tex. Oct. 28, 2016) (citing *Stoffels*, 430 F. Supp. 2d at 647-48).[3] A defendant is permitted, however, to file a motion to dismiss on new claims that were raised for the first time in an amended complaint

---

[3] "Some courts strictly construe [Rule 12(g)(2)'s] requirements and do not allow new arguments in successive motions to dismiss," while "[o]ther courts reason that a hyper-technical application of Rule 12(g)(2) would undermine the efficient resolution of disputes promoted by the Federal Rules." *Albers v. Bd. of Cty. Com'rs of Jefferson Cty.*, 771 F.3d 697, 702 (10th Cir. 2014) (citing cases) (affirming a district court's dismissal because "[i]rrespective of whether the district court committed a technical violation of Rule 12(g)(2) when it considered the [defendant's] successive 12(b)(6), it did not affect the substantial rights of the parties" and "[t]herefore, any presumed error was harmless"). "This latter group of courts generally construes Rule 12(g)(2) as allowing district courts the discretion to consider successive motions to dismiss in the interest of efficient resolution of the case." *Id.* (citing *F.T.C. v. Innovative Mktg., Inc.*, 654 F. Supp. 2d 378, 383-84 (D. Md. 2009) (collecting cases)). Here, neither party directly addresses how strictly Rule 12(g)(2) should be construed in this case or cites authority from the Fifth Circuit or the Northern District of Texas on that issue. (*See* docs. 17, 20, 21.)

that was filed after its original motion to dismiss. *Brown v. Barrett Burke Wilson Castle Daffin & Frappier, LLP*, No. 3:06-CV-0363-G, 2007 WL 628057, at *3 n.* (N.D. Tex. Feb. 28, 2007) (citing *Stoffels*, 430 F. Supp. 2d at 647-48).

Here, after noting that Plaintiff's amended complaint alleged "significant additional facts" and deleted some of his claims, the district court denied the City's earlier motions to dismiss without reaching the merits and *without* prejudice.  (doc. 16) ("In view of Plaintiff's First Amended Original Complaint, Defendants' Motions are DENIED without prejudice.").  Under these circumstances, the City's motion is not successive.  Moreover, because the City's arguments were not "omitted from its earlier motion," it did not waive them under Rule 12(g)(2), even if its motion was considered successive.  *See* Fed. R. Civ. P. 12(g)(2).  Accordingly, the City is not precluded from bringing its Rule 12(b)(6) motion in response to Plaintiff's amended complaint.[4]

## B.   Timeliness of Motion

Plaintiff also seems to argue that the City's motion to dismiss is untimely.  (*See* doc. 20 at 4) (arguing that "in accordance with Rule 12(a)(4)(A) Defendant City of Dallas should have filed an Answer in this matter within 14 days after this Court issued an Order denying the Defendant City of Dallas' first motion to dismiss on May 24, 2016. In light of the agreement of the parties, the City of Dallas' answer was due by June 10, 2016, instead it filed another Rule 12(b)(6) motion to dismiss.").

A defendant must generally serve a responsive pleading or an answer within 21 days after being served with the summons and complaint.  Fed. R. Civ. P. 12(a)(1).  A Rule 12 motion extends

---

[4] Even if the City was technically barred under Rule 12(g)(2) from bringing its current Rule 12(b)(6) motion to dismiss, at least one circuit court has held that a district court may consider a failure to state a claim argument raised in a successive pre-answer motion despite the general prohibition of Rule 12(g)(2) because it could be raised in a motion for judgment on the pleadings under Rule 12(c). *See Albers*, 771 F.3d at 702; *see also English v. Univ. of Tulsa*, No. 14-CV-0284-CVE-FHM, 2015 WL 4623942, at *1 n.1 (N.D. Okla. Aug. 3, 2015) (considering *Albers*).

the time for answering:  "if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action."  Fed. R. Civ. P. 12(a)(4)(A); *Strukmyer, LLC v. Infinite Fin. Sols., Inc.*, No. 3:13-CV-3798-L, 2013 WL 6388563, at *3 (N.D. Tex. Dec. 5, 2013).[5]  The deadline for responding to an amended complaint is established by Rule 15, however.[6]  Rule 15(a)(3) provides that "[u]nless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."  Fed. R. Civ. P. 15(a)(3).

Here, the parties had an agreement to (at least) extend the City's deadline to file an answer to the amended complaint until June 10, 2016,[7] and the City filed *both* a motion to dismiss and an

---

[5] Federal courts have noted that Rule 12(a)(4) is a "tolling provision."  *General Mills, Inc. v. Kraft Global, Inc.*, 487 F.3d 1368, 1376 (Fed. Cir. 2007); *see Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007).

[6] Some federal courts have noted that "[w]hether Federal Rule of Civil Procedure 15(a)(3) imposes a duty to respond to an amended complaint when a defendant has timely responded to the original complaint is not a settled question."  *Reeves v. Wells Fargo Bank, NA*,  No. EP-14-cv-00187-DCG, 2014 WL 12493287, at *3 (N.D. Tex. Dec. 18, 2014) (citing *Johnson v. Berry*, 228 F. Supp. 2d 1071, 1079 (E.D. Mo. 2002) ("The last sentence of [Rule of Civil Procedure] 15(a) requires a party to plead in response to an amended pleading. No option is given merely to stand on preexisting pleadings made in response to an earlier complaint."); *Applin v. Deutsche Bank Nat. Trust*, No. CIV.A. H-13-2831, 2014 WL 1024006, at *2 (S.D. Tex. Mar. 17, 2014) ("Where there is a pending motion to dismiss, but during the pendency of that motion, an amended complaint is filed, the court may apply the pending motion to dismiss to the amended complaint.")).

[7] The parties appear to disagree about the scope of the agreement. (*See* docs. 20 at 4, 21 at 4-5.)  The agreement consists of emails that state:

> Dear Mr. Roberts,
> Thank you so very much for agreeing to an extension until and including Friday, June 10, 2016 for the Defendants' answers/responses to Plaintiff's First Amended Complaint.
> Jim Butt

(doc. 21-1 at 1.)  Counsel for Plaintiff responded later that day at 12:25 PM:

> James,
> No problem. Thanks.
> V/r,

amended answer on that date.  (docs. 17; 18; 20 at 4; 21 at 4-5.)  The email memorializing the agreement for an extension specifically states that that the extension was for "answers/responses to Plaintiff's First Amended Complaint." (doc. 21-1 at 1.)  Plaintiff's counsel apparently did not dispute this characterization of the agreement as also extending the deadline for responses.  Accordingly, the City's motion to dismiss was timely under the parties' agreement.

## II.  RULE 12(b)(6)

The City moves to dismiss Plaintiff's municipal liability claim under Rule 12(b)(6) for failure to state a claim.  (doc. 17.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

---

Lantis G. Roberts, Esq.

(*Id.*)

7

In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is *plausible on its face*." *Id*. at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

Under the Rule 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker*, 75 F.3d at 196; *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d at 499 (citation omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Here, the City relies, in part, on the text of DPD General Order 906 that it provided with its

motion to dismiss.  (*See* docs. 17, 17-1.)  Because the order was referred to in Plaintiff's amended

complaint and is central to his municipal liability claim, the City does not rely on any matters outside

of the pleadings in support of its motion to dismiss.  *See Collins*, 224 F.3d at 499 (noting "approvingly

. . . that various other circuits have specifically allowed that documents that a defendant attaches to

a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's

complaint and are central to her claim").  Conversion of the City's motion to dismiss into a motion for

summary judgment is therefore unnecessary.  *See id.*; *Katrina Canal Breaches Litig.*, 495 F.3d at 205.

### IV. MUNICIPAL LIABILITY

The City moves to dismiss Plaintiff's claim under 42 U.S.C. § 1983 for failure to state a

plausible claim. (doc. 17 at 9-25.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a

citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States"

and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas*

*v. Bradshaw*, 512 U.S. 107, 132 (1994).  A municipality may be liable under § 1983 if the execution

of one of its customs or policies deprives a plaintiff of his or her constitutional rights.  *Monell v. Dep't*

*of Social Servs.*, 436 U.S. 658, 690-91 (1978).  It is well-settled that a municipality cannot be liable

under a theory of *respondeat superior*, however.[8]  *Piotrowski v. City of Houston*, 237 F.3d 567, 578

(5th Cir. 2001) (citing cases).  "Under the decisions of the Supreme Court and [the Fifth Circuit],

municipal liability under section 1983 requires proof of three elements: a policymaker; an official

policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.*

---

[8] *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency."  *Respondeat Superior*, BLACK'S LAW DICTIONARY (10th ed. 2014).

(citing *Monell*, 436 U.S. at 694); *see also Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005);

*Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

## A.     <u>Official Policy or Custom</u>

The City contends that "[Plaintiff] fails to plead facts supporting the existence of a City custom

having the force of official City policy."  (*Id.* at 12.)[9]

"Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and
> promulgated by the municipality's lawmaking officers or by an official to whom the
> lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although
> not authorized by officially adopted and promulgated policy, is so common and well
> settled as to constitute a custom that fairly represents municipal policy. Actual or
> constructive knowledge of such custom must be attributable to the governing body of
> the municipality or to an official to whom that body had delegated policy-making
> authority. Actions of officers or employees of a municipality do not render the
> municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of*

*Houston*, 291 F.3d 325, 328 (5th Cir. 2002).  Where a policy is facially constitutional, a plaintiff must

demonstrate that it was promulgated with deliberate indifference to known or obvious consequences

that constitutional violations would result.  *Piotrowski*, 237 F.3d at 579-80 & n.22; *accord Peterson*

*v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010).

"Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened

negligence will not suffice' to prove municipal culpability."  *Piotrowski*, 237 F.3d at 579 (citation

omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and

---

[9] The City concedes Plaintiff "adequately plead[ed] the identity of the City's final policymaker: the
Dallas City Council," which is the first element of his claim.  (doc. 17 at 11.)

the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" was conclusory and insufficient to plead municipal liability. *Spiller*, 130 F.3d at 167.

Here, Plaintiff appears to allege that the City's use of force policy is facially constitutional, but that the City failed to train and supervise its officers, and that the City also has a custom or practice of allowing police officers to use excessive force. (*See* doc. 12 at 10.) He also alleges that the philosophy statement in the use of force policy "exhibits an indicator of deliberate indifference on the part of the City's policymakers to the need for a more effective and consistent policy."[10] (*Id.*) Plaintiff

---

[10] The philosophy statement in the policy states:

A.    This philosophy is intended as a broad guide to the use of deadly force and as a moral and ethical approach to the use of deadly force policy. Although not intended as a strictly enforced set of rules, the philosophy statement describes the manner in which the procedures will be applied.

B.    Protection of human life is a primary goal of the Police Department; therefore, police officers have a responsibility to use only the degree of force necessary to protect and preserve life.

C.    Deadly force will be used with great restraint and as a last resort only when the level of resistance warrants the use of deadly force. The Dallas Police Department places a greater value on human life than on the protection of property; therefore, the use of deadly force is not allowed to protect property interests.

11

generally criticizes the lack of annual training for officers (but notes that all new officers receive use of force training); cites to various organizations who have at different times criticized DPD's policy; and references 197 officer-involved shootings between July 20, 2002 and July 18, 2013.[11]  (*Id.* at 8-9, 11-14.)  He also generally references two shootings by police officers in 1986, the beating of a 28 year-old motorist by three police officers in 2010, an individual being run over by a police car in 2013, and a police shooting in 2014.  (*Id.* at 8-9.)

The amended complaint does not allege a pattern of similar incidents of alleged use of excessive force or that the City's policymakers were repeatedly put on notice that additional training or supervision for veteran officers was needed.  The Fifth Circuit has explained that "[w]here prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'"  *Peterson*, 588 F.3d at 850 (quoting *Webster*, 735 F.2d at 842).  The Fifth Circuit also explained that "[a] pattern . . . requires 'sufficiently numerous prior incidents,' as opposed to isolated instances."  *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

Although Plaintiff generally references several other incidents, he does not rely on similar instances of alleged *excessive* force.  For example, he does not allege that the 197 officer-involved shootings between July 20, 2002 and July 18, 2013, involved force that was excessive or otherwise unreasonable under the circumstances of the shootings.  (*See* doc. 12 at 8-9.)  Instead ,he appears to

_____

(doc. 17-1 at 11.)

[11] He does not allege that these instances violated the DPD's use of force policy or involved the use of excessive force.  (*See* doc. 12 at 9.)

rely only on the fact that force was used, and that 58 of the shootings resulted in a fatality.  (*See id.*)
Plaintiff also references two shootings by police officers in 1986, the beating of a 28 year-old motorist
by three police officers in 2010, an individual being run over by a police car in 2013, and a police
shooting in 2014.  (*Id.* at 8-9.)  Although some of the officers were indicted and faced criminal
charges, Plaintiff does not allege that the force used in all of the incidents were excessive or that the
use of deadly force policy was applied inconsistently.  (*See id.*) (noting that some of the shootings
were "controversial").  Even if he alleged that those incidents involved excessive force, however, they
would not amount to a pattern of sufficiently numerous incidents because the type of force varied and
the five instances were spread out over approximately 30 years.  *See, e.g., Peterson*, 588 F.3d at 851
(holding that 27 complaints of excessive force in a three-year period were insufficient to establish a
pattern of conduct that is "so common and well-settled as to constitute a custom that fairly represents
municipal policy").  At best, Plaintiff has only alleged isolated instances of excessive force.

Additionally, "[t]he failure to train can amount to a policy if there is deliberate indifference
to an obvious need for training where citizens are likely to lose their constitutional rights on account
of novices in law enforcement." *Peterson*, 588 F.3d at 849 (citing *Brown v. Bryan Co.*, 219 F.3d 450,
458 (5th Cir. 2000)).   In the Fifth Circuit, "to hold a municipality liable for failure to train [or
supervise] an officer, it must have been obvious that 'the highly predictable consequence of not
training [or supervising]' its officers was that they 'would apply force in such a way that the Fourth
Amendment rights of [citizens] were at risk.'" *Peterson*, 588 F.3d at 849 (quoting *Brown*, 219 F.3d
at 461).  "The failure to train [or supervise] must reflect a 'deliberate' or 'conscious' choice by a
municipality." *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th
Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (internal quotation marks

13

omitted).

Plaintiff alleges that the City was "fully aware of the challenges facing the DPD as well as the systemic impact of such challenges on the citizens and/or victims on their constitutional rights," "acted with deliberate indifference to the customs and policies of the DPD," or "adopted of policy of merely accepting the status quo," but he does so only in a conclusory manner. (doc. 12 at 13.) In support, he relies on the alleged need for further training and supervision, but he focuses only on Officer's interactions with Plaintiff and his actions while conducting surveillance immediately before the interaction. (*Id.* at 7, 11-12.) As noted, Plaintiff acknowledged that the City mandates training for all new officers, and he has not alleged earlier instances of alleged excessive force by Officer. (*Id.* at 12.) Accordingly, Plaintiff relies only on a single incident of Officer's conduct to allege a City policy of failure to train or supervise.

Because Plaintiff essentially relies on a single incident of alleged excessive force plus vague generalities and conclusions, he has not sufficiently alleged an official policy or custom for municipal liability.[12] *See World Wide Street Preachers Fellowship*, 591 F.3d at 753-54; *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012) (a "single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail."),

---

[12] An "extremely narrow" exception exists in the context of failure-to-train allegations. *Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014). Under the single incident exception, "§ 1983 liability can attach for a *single decision not to train an individual officer* even where there has been no pattern of previous constitutional violations." *Brown v. Bryan Co.*, 219 F.3d 450, 459 (5th Cir. 2000)), *cert. denied*, 131 S. Ct. 66 (2010) (emphasis added). It applies only in "extreme circumstances," however. *Khansari v. City of Houston*, No. H-13-2722, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (citing *Brown*, 219 F.3d at 452-48). To show liability, "a plaintiff must prove that the *highly predictable consequence* of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). This narrow exception is not applicable here because Plaintiff does not allege that a decision was made not to train Officer.

*adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012).  Even accepting his well-pleaded facts as true and viewing them in the light most favorable to him, he has failed to nudge his claim across the line from conceivable to plausible.  *See Twombly*, 550 U.S. at 555.

## B.   <u>Moving Force</u>

Even if Plaintiff had sufficiently alleged an official policy or custom, Defendant also argues that Plaintiff has pleaded only "raw conclusions" regarding causation and that "[he] merely posits legal causation as a fact."  (doc. 17 at 23.)

Plaintiffs must adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof."  *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694).  "In other words, a plaintiff must show direct causation."  *Peterson*, 588 F.3d at 848 (citing *Piotrowski*, 237 F.3d at 580).  A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Valle*, 613 F.3d at 542 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (internal quotation marks omitted); *see also Johnson*, 379 F.3d at 310 (quoting *Fraire v. City of Arlington*, 957 F.2d at 1281) (noting "[t]his connection must be more than a mere 'but for' coupling between cause and effect")).  A plaintiff therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."  *Id*. (quoting *Brown*, 520 U.S. at 411) (internal quotation marks omitted); *see also Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407) ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result.").  Simple or even heightened negligence is insufficient to meet

the deliberate indifference requirement.  *Piotrowski*, 237 F.3d at 579 (citing *Brown*, 520 U.S. at 407).

Here, Plaintiff alleges that the City's policy "*led to* the constitutional deprivations suffered by [Plaintiff]," "*led to* the unfortunate result of injuries and deaths of several citizens over the years," and "*led to* [Officer's] encounter with [Plaintiff] and brought the use of force policy into place." (doc. 12 at 7, 11.)  In *Spiller*, the Fifth Circuit found that an assertion that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support the causation element for municipal liability under *Monell*.  *Spiller*, 130 F.3d at 167.  To the extent that he alleges other action on the part of the City's policymakers in support of causation, he makes only conclusory statements and formulaic recitation of the elements. (*See* doc. 12 at 10, 13) ("The city council has acted with deliberate indifference to the customs and policies of the DPD and how it impacts the constitutional rights.").

Plaintiff has failed to allege facts in support of causation, the third element of his municipal liability claim.  He has therefore failed to allege sufficient facts to raise his right to relief above the speculative level, and the City's motion to dismiss should be granted.  *See Twombly*, 550 U.S. at 555.

## V. RECOMMENDATION

The City's Rule 12(b)(6) motion should be **GRANTED**, and Plaintiff's claims against it should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED,** on this 12th day of January, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17